## Case No. 8,809.

### M'GRATH v. The CANDALERO.

[Bee, 60.] [1]

District Court, D. South Carolina. Oct. 24, 1794.

ADMIRALTY—ILLEGAL SEIZURE—DAMAGES.

Restitution of a vessel and cargo, illegally seized and carried into a French port, was decreed by the admiralty there. This court sustained a suit for consequential damages.

[Cited in The Martha Anne, Case No. 9,146; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 432; Mendell v. The Martin White, Case No. 9,419.]

[This was a libel by M'Grath against the sloop Candalero and Henri Hervieux for damages for the illegal seizure of the schooner Polly and her cargo.]

The claimant in this case has produced no evidence, nor attempted to controvert that of the actor. The latter has proved that he is a native and citizen of the United States, and sole owner of an American schooner called the Polly. That on the 5th day of July last this vessel cleared regularly from this port, with a cargo, bound to the island of Providence, having on board all necessary papers. That the cargo was wholly neutral, and so expressed in the clearance, which enumerated every article; and that there was nothing contraband on board. That the Polly, commanded by Noah Wright, and having the actor on board, passed the bar of Charleston on her intended voyage, in company with a private armed vessel of war called the Narbonnoise, fitted under the authority of the French republic, and commanded by the claimant. That they proceeded together at sea about nine leagues, and then, on the afternoon of the same day, the said privateer took possession of the Polly, took out the owner, captain and crew, except one man, and carried the vessel to Port-de-Paix in St. Domingo, as prize. That the clearance and other necessary documents were produced, but entirely disregarded. Upon their arrival at Port-de-Paix, an examination took place in the office of admiralty, and a decree was passed ordering immediate restitution of the vessel and such parts of the cargo as belonged to M'Grath, and a sale of the rest, (which also belonged to American citizens) with a deposit of the money, until the owners should prove their right to the same.

It appears that before redelivery of the schooner to her owner she had been run ashore in a gale of wind, and received so much damage that she was sold for 600 dollars; much less than her previous value. And, there being no market for the owners' part of the cargo, he left it in the hands of the captors, and brings this suit for compensation for the loss he has sustained: 1st. By being carried to a distant port instead of that to which he was bound, and where his cargo would have sold to great advantage. 2d. By the damage done to his vessel, which he was compelled to sell at a very low rate, for want of funds to repair her. 3d. By spoliation of all his cabin and other stores. 4th. By being taken out of his own vessel, and confined for sixteen days on board the privateer. 5th. By the derangement of his affairs, having been kept out of business since August last.

The claim for damages is founded on the law of nations, and on the 22d, 23d, 24th, 25th, and 27th articles of the treaty with France.

The only justification set up by the claimant is 1st. His right, by virtue of his commission to board and search all vessels at sea. 2d. That an adjudication having taken place in the court of the power to whom the captor belonged, this court cannot inquire into the grounds of such decree, but must give full faith and credit to the same; and that if the party has been injured he must apply for relief to the executive power of these states.

The 27th article of the treaty with France regulates the mode of proceeding of their vessels of war and privateers, which, in the present instance was wholly disregarded. Hervieux first enticed this schooner to follow him to sea by an offer to pilot her over the bar, as she had no pilot on board. As soon as she had proceeded above a marine league from the coast she was pursued by the privateer, and two shots fired at her; the lieutenant then boarded her with five others, all armed, carried the captain and papers on board the privateer, and sent a prizemaster and crew on board the prize. Hervieux, on examining the papers, acknowledged their validity, but said that he would carry the vessel into a French port where provisions were wanted, rather than suffer her to proceed to an English one. This was done without the slightest pretext, and in wanton violation of the treaty: for even if she had had contraband goods on board, more than the captor could have received on board his vessel, the 13th article of that treaty provides that, this being the nearest port, the Polly should have been brought in

here, where a proper and speedy remedy would have been afforded.

As to the right of this court to inquire into the adjudication that took place at Port-de-Paix, I am ready to declare that I should not do so with any view to controvert such adjudication; for the sentence of an admiralty court duly constituted must receive full credit in foreign countries. But I am called upon to support that decree. The case from Ld. Raym. 935, is good law, and it is there said by Lord Holt that the sentence of a civil law court in a foreign realm should be executed in England by a court of the same nature, and proceeding according to the same law. Had a suit for damages been dismissed at Port-de-Paix, it might have been a question whether this suit should be sustained. But as the illegality of the seizure was pronounced there, as the action is transitory, and the actor has chosen to seek for compensation in this court, I must say that his suit is properly brought. I think the libel relevant, and fully proved, and shall, therefore, proceed to inquire into the quantum of damages. The principles laid down in Lecaux and Eden (Doug. 575) apply here. Guided by them, and having fully inquired into the loss of time and property, and considered the imprisonment on board the privateer, I adjudge and decree that the claimant pay to the actor 1984 dollars, with costs of suit, and that the privateer remain under attachment till the same be paid.

Loss on vessel ......................... 200
Loss of stores ......................... 274
Corn, worth at Providence.............. 510
Detention of captain and crew and consequent loss ......................... 1000
                                        _____
                          Dollars 1984

[Subsequently this cause came before the court on a motion to review, but the motion was refused. Case No. 8.810.]